[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this action for rent due under a verbal equipment rental agreement with the defendant Colossale Concrete, Inc. (Colossale). It is not brought for breach of that agreement.
Plaintiff also brings this action against National Grange Mutual Insurance Company (National) under a labor and materials bond for having supplied the equipment to Colossale for use on a state project bonded by National. CT Page 13966
 Facts
On or about December 21, 1989 R C Newbury Inc. (R C) owned the green forklift that is the subject of this action. It was then given as security to Connecticut Bank Trust (CBT) for a loan to R C.
The plaintiff corporation was formed by James Newbury's (James) father in June 1965. By 1988 James owned two-thirds of the R C share and was its president.
On or about October 2, 1989 R C became indebted to CBT for various corporate borrowings. The indebtedness of R C to CBT was secured by a collateral financing statement and security agreement on all of the equipment of R C. including the forklift. This was personally guaranteed by James and by his wife, Judith K. Newbury (Judith). Sometime in 1990, CBT called various notes and money due under a letter of credit in excess of $250,000. R C corporation was dissolved in or about September of 1990. Neither James nor Nacorp ever owned the forklift.
After calling the notes and debt CBT experienced financial problems and Federal Deposit Insurance Corporation (FDIC) became the receiver of CBT.
James and Judith were able to work out a settlement agreement with the FDIC as receiver of CBT. Pursuant to the terms of that settlement agreement. James and Judith paid an agreed upon sum to the FDIC and Judith alone received an assignment of all of the rights of FDIC as receiver of CBT in the forklift. From February 18, 1994 Judith has been the sole owner of the forklift.
James and Judith were at all relevant times and still are, husband and wife. Nacorp Corporation was incorporated and thereafter it was dissolved in 1993.
James met defendant's president Dominic Colossale (Dominic) in early September, 1992 when Nacorp and Colossale were working on two different jobs across the street from one another in New Britain, Connecticut. At that time James said he owned the forklift. He did not. The two men discussed the forklift and James agreed to let defendant use it if it could be started with some minor repairs. They agreed that defendant would pay James $1500 per month as a form of rental payment with a deduction for CT Page 13967 the cost of repairs.
In spite of the fact that James said he was the owner Nacorp billed defendant in September, October or November for the period September 15, 1992 through October 14, 1992 for either $1400 or $1500. The value of the repairs done by Colosalle was $100. On November 14, 1992 Colossale paid $1400 on that bill.
Nacorp also billed defendant $1500 for rent from November 15, 1992 through December 14, 1992 but there is no separate bill for the October-November period. Thereafter plaintiff sent one more bill for the December 15, 1992 through January 14, 1993 period. On a date in January another bill was sent for the period September 15 through January 14, 1993. No further bills were sent until May 27, 1993 when a cumulative bill through June 15, 1993 was sent.
On or about June 17, 1993 Colossale wrote to Nacorp, "Att. Jim Newbury", which the court reads as "Attention Jim Newbury". That letter advised the location of the forklift and that plaintiff could pick it "up at any time."
James testified that he called an equipment mover named Yankee to go pick up the forklift after being told its location by a letter of June 17, 1993. Nacorp again sent Yankee to pick up the forklift in "mid 1993." Neither of these orders to Yankee resulted in securing possession of the forklift.
The court received no evidence from Yankee and the plaintiff presented no bills from Yankee in spite of the fact that plaintiff believes Yankee made two separate trips to pick up the forklift.
Colossale used the forklift on the New Britain site and much later on a Department of Transportation (DOT) job site. The use in New Britain was during the course of one or two months. The use on the DOT job site was five or six months. We have no evidence of Colossale's charges to DOT on that job. Plaintiff picked up the forklift at the DOT job site on June 6, 1995. Plaintiff claims 30 months rental from DOT's bonding company National Grange.
Defendant had possession of the forklift from September 15, 1995 through June 6, 1995. CT Page 13968
The court does not know who, if anyone, insured the forklift or who took depreciation on the forklift on any tax return from 1988 through 1995. Nor does the court know who paid municipal taxes on it.
The court cannot find that plaintiff ever abandoned the forklift, although it was certainly not diligent in retrieving it.
 Law
A lease is a contract and its construction presents a question of law for the court, Sacharko v. Center EquitiesLimited Partnership, 2 Conn. App. 439, 445.
I. Re Colassale A. Motion to Add Party Plaintiff
Plaintiff moved to add Judith Newbury as a party plaintiff. The court denies this because it is untimely to the extent of being prejudicial to defendants. She was not the owner when the lease was entered into. In addition upon trial of the case Nacorp was very possibly the correct plaintiff when the evidence is examined because James said he granted the power to use and and lease to Nacorp. That does not mean that plaintiff s claims were based on a contract which it had.
B. Statute of Limitations
Suit was begun June 29, 1996. Whatever agreement was had between the parties began September 15, 1992. The defendant was in default for failure to pay rent from December 15, 1992.
Whoever the owner was had the right to sue for rent beginning December 15, 1992 because at that time it was owned by an entity and the past unpaid rent was due. Brenner v. Manning,7 Conn. Sup. 247, 248-249. There are two relevant limitation of action statutes. C.G.S. §§ 52-576 and 52-581. The first is for a six year period and the second for a three year period. § 52-581
is only applicable to non-written contracts which are executory.Hitchcock v. Union New Haven Trust Co., 134 Conn. 246, 258-259. An executory contract is one which has been fully performed by plaintiff id. 259. Tierney v. American v. American UrbanCorporation, 170 Conn. 243, 249; Cacase v. Morcaldi, 37 Conn. Sup. 735. CT Page 13969
Correlatively that entity could not yet sue for rent not yet due. Monarch Accounting Supplies. Inc. v. Prezioso,170 Conn. 659, 667.
In our case the plaintiff has done all that it was required to do under the contract by delivering or allowing defendant to take the forklift. Thus it is an executory contract and governed by C.G.S. § 52-581. In addition the plaintiff could not bring suit for any debt until it became due. As our action was commenced on June 29, 1996 it had only to sue by December 16, 1995 under the three-year statute. As each month went by plaintiff lost is right to sue for the month's rent that was due three years before. Thus plaintiff lost the right to sue only for rental payments due for the period from December 15, 1992 through June 15, 1993.
Of course all of this is predicated on the basis that Nacorp had a right to lease the forklift to anyone.
C. Statute of Frauds
C.G.S. § 52-550 (a)(5) provides that no action may be maintained upon an agreement not to be performed within one year unless it is in writing. Our agreement had no termination date. It could have been performed in one or two months or at some indefinite time beyond one year. As such our contract does not come under the restrictions of that statute. C. R. Klewin, Inc.v. Flagship Properties, Inc., 220 Conn. 569, 583.584.
D. Corporate Existence
C.G.S. § 33-394 allows a dissolved corporation to collect its assets and do every other act necessary to wind up its business. That is what Narcorp claimed to be doing here.
E. Title to Forklift
For plaintiff to prevail it must prove either ownership of the forklift or the authority from the owner to possess and lease it. Proof of that must be alleged and proved. Plaintiff's complaint does not allege it and it was not proved on trial. Defendant need not file a special defense in that regard. CT Page 13970
For our purposes the first titleholder of the forklift was R C beginning December 1989. Next it was CBT and then FDIC, neither of whom ever authorized the leasing of the forklift. On February 18, 1994 Judith became the owner and continued as such through June 29, 1996 when suit was brought. The court finds that CBT, FDIC and Judith never authorized the leasing of the forklift by James nor of his giving it to Nacorp. Plaintiff has not sustained its burden of proof of its right to receive any rental payments under contract or for defendant s use and possession of the forklift.
As the plaintiff says in its brief, "the use of the forklift by NACORP Construction was authorized by James Newbury in his capacity as president of R C Newbury, Inc.", not by Judith or anyone else. The court does not know if on September 15, 1992 R C was the owner. It was also possibly CBT or FDIC.
A company called Bestech also seems to have had some interest in the forklift. It even sent a bill to defendant for rent for the period September 15, 1992 through June 15, 1993. This was probably just an office error.
F. Mitigation
Plaintiff could have retrieved the forklift by July 1, 1993 and should have. Thus if it were entitled to any damages that entitlement ended July 1, 1993.
G. Quantum Meruit
The monthly rental value of the forklift was $1500 during the relevant period.
H. Interest
The plaintiff has failed to prove that Colassale's actions were wrongful.
II. Re National Grange A. Notice
C.G.S. § 49-42 requires notice of a claim on a bond such as we have here be given to the surety and the principal within 180 days after the applicable payment date for work or the CT Page 13971 materials delivered to the job site. Service of a notice was made on National on or about October 2, 1995 well within the 180 days. Although Colossale received from National a copy of the notice which was served on National, no notice was ever served on Colossale.
There are no allegations in the complaint about notice to either defendant nor is a copy of any such notice attached to the complaint. Such allegations or attachments are required. Barteisv. Windsor, 134 Conn. 569, 570-572. P.B. § 185. In addition no recitation of the statute sued upon, C.G.S. § 49-42, was specifically identified by number. P.B. § 109A requires such identification.
Judgment for defendants on all counts.
N. O'Neill, J.